## No. 4023

### Second Circuit

### DOLLAR v. SOUTHERN STATES CO., INC.

(July 14, 1931. Opinion and Decree.)
(November 18, 1931. Rehearing Refused.)
(January 4, 1932. Writ of Certiorari and Review Refused by Supreme Court.)

J. Norman Coon, of Monroe, attorney for plaintiff, appellee.

Theus, Grisham, Davis & Leigh, of Monroe, attorneys for defendant, appellant.

DREW, J. This is an action brought under the Workmen's Compensation Law of Louisiana (Act No. 20 of 1914, as amended). The plaintiff, an employee of the defendant, a Louisiana corporation with its domicile in Shreveport, Caddo parish, La., was injured by the overturning of a loaded truck that he was driving on the road between Choudrant and Monroe, something less than a mile north of Choudrant, in Lincoln parish, on May 3, 1930, at about the hour of 8:30 p. m.

At the time of the accident, plaintiff was in the employ of defendant and driving an automobile truck loaded with equipment for drilling oil and gas wells, defendant being engaged in the work of drilling and operating gas wells in Richland parish, La. While driving his loaded truck along the graveled road in the dark of the night and on down-grade, in some way the driver lost control of the truck and it ran into the ditch on the roadside, and turned over; plaintiff being thrown underneath the truck and pinioned to the ground, and remaining there until he was rescued by outside help.

The injuries alleged to have been suffered by him from the said accident were as follows: Fracture of the left clavicle (collar bone); a curved, lacerated wound one inch above the right eye; a lacerated wound three inches long, beginning at a point three inches above the right eye and extending backward on the top of the head, just to the right of the middle line of the head; a fracture of the nose; a severe lacerated wound three inches long just beneath the right eye and connecting with the nose at the place of fracture; a lacerated wound of the first finger of the right hand, the laceration involving the cavity of the second joint; general contusions over the entire body; extensive and noticeable scar tissue about the face and head, causing serious and permanent dis-

figurement; the injury to the finger causing stiffness in the joint and inability to close the finger.

Plaintiff further alleges that by reason of the injury to his nose, there has developed in his nostrils a growth which causes a noise similar to that of snoring every time he breathes through the nasal' cavity, which growth has constricted and narrowed the nasal cavity to such an extent until it now has made it almost impossible for him to breathe through his nose; and that by reason of his said injuries, a neuritic condition has developed in his arms and shoulders, and is threatening to extend, and will become more serious and remain permanent, and has caused him to lose the proper and normal function and use of said organs; that his said injuries have caused him to be in a weakened and nervous condition, and rendered him totally and permanently disabled from doing any kind of work of any nature or description.

Alleging his injuries to be permanent and to totally render him unable to do any kind of work, plaintiff claims compensation for a period of four hundred weeks, at the rate of $20 per week, payments to begin May 10, 1930; and he also asks for $250, for surgical, medical, and hospital services.

The answer of defendant admits that plaintiff was in the employ of defendant at the time of the injury complained of, at the wage rate alleged in the petition; admits the overturning of the truck as alleged, and that plaintiff received an injury in the said accident; but alleges that the said injury was slight and not serious and that plaintiff has recovered from it; it denies that said injury incapacitated plaintiff for performing his usual and ordinary labors. Defendant further alleges

that at the time of the accident, plaintiff was under the influence of intoxicating liquor, and was intoxicated, and did not have such control of his faculties as would permit him to safely operate a motor vehicle, all of which was unknown to defendant, and that the overturning of the truck was caused by the intoxicated condition of plaintiff, which he alleges precludes plaintiff from recovering; and he pleads the same in bar of plaintiff's recovery.

On these issues, the case went to trial, and there was judgment in the lower court in favor of plaintiff for the sum of $20 per week for a period of one year, from which judgment defendant has appealed, and plaintiff has answered the appeal praying that the judgment be increased to four hundred weeks.

There is no dispute on the defendant's part of the fact of the injury sustained by plaintiff and of plaintiff's employment by defendant at the time of said accident, but there is dispute by defendant as to the extent, the seriousness, and the permanency of the said injuries, and the liability of defendant for compensation because of said injuries.

Defendant denies liability for the alleged reason that plaintiff was intoxicated from alcoholic liquor at the time and immediately previous to the accident, and claims that said intoxication was the cause of the accident and plaintiff's consequent injury.

The case resolves itself down to the pivotal question: Was plaintiff intoxicated at the time of the accident, and, if so, was his intoxication the proximate or sole cause of the accident?

Defendant offered the following evidence on the question of the intoxication of plaintiff:

Mr. Leonard Green, of Jackson, Miss., who testified that plaintiff was pretty drunk about dark when he stopped at a filling station just out of Ruston. Plaintiff asked the way to Monroe, and Green wiped off his windshield and put water in the radiator, for which plaintiff thanked him. Green smelled whisky on plaintiff's breath and said plaintiff was very quiet and looked as though he was about to go to sleep—was "droll-like." There was nothing unusual about plaintiff's talking and he drove the truck away from the station all right, there being nothing noticeable about the way he drove. He saw plaintiff just after the accident and heard him say to be careful to those who were placing him in the car to carry him to the sanitarium. Because plaintiff looked sleepy, and the smell of whisky on his breath, caused the witness to think he was drunk. There was nothing unusual otherwise about his actions.

John E. Ford, a boy eighteen years of age, who rode in the car with plaintiff from the scene of the accident to the sanitarium, said he could smell whisky slightly at times, and that there was no action from plaintiff to indicate that he was intoxicated, and he did not think he was.

Roy Dorman, who also rode to the sanitarium in the car with plaintiff, testified that he could smell whisky very slightly at times, and that plaintiff did not appear to be intoxicated, and his conduct was not that of an intoxicated man. He testified that plaintiff talked sensibly and wanted to be taken to Monroe and asked that his wife be called. He asked them to get a doctor quick and for Dorman to take his pocketbook out of his pocket and give it to him after arriving at the sanitarium.

Clarence Brewster testified that when plaintiff stopped at the filling station just out of Ruston that there was something the matter with him. He asked the direction to Dubach and then the direction to Monroe. Brewster was within three feet of plaintiff and did not smell whisky. Said plaintiff drove off all right, nothing unusual about his driving, was dressed in a suit of common oil field worker's clothes, and that he could not positively identify plaintiff as the man whom he testified about, but thought it to be the same man.

N. B. Ford, testified that Brewster said that plaintiff was drunk. He, himself, did not see the plaintiff.

Guy Braswell, deputy sheriff, saw a truck passing through Ruston bump into a car on the streets of Ruston; he did not attempt to say it was the plaintiff.

W. V. Tomlinson was in the car that carried plaintiff to the sanitarium and did not smell whisky until arriving at the sanitarium, then smelled it very strong.

This is the entire testimony offered by defendant on the question of the intoxication of plaintiff, with the exception of the admission of plaintiff that he took one drink of prescription whisky about one mile out of Minden about four-thirty that afternoon, and the statement made by his co-worker, Dupree, who was driving another truck of defendant, while in jail at Ruston, and in answer to queries by the representative of the insurance company, that he and plaintiff had taken several drinks of prescription whisky that afternoon.

The witnesses offered by defendant who were closest to plaintiff and who rode with him some eight miles to the sanitarium all testified that he was not intoxicated, and showed no indication of intoxication.

He talked rationally and acted rationally. Several witnesses, who testified that plaintiff was intoxicated, merely expressed an opinion based on the smell of whisky and his sleepy appearance. They fail to relate any action of his that would indicate that he was intoxicated or anything that he said that would indicate that he did not have his full faculties. They all testified that there was nothing unusual about his driving.

The mere opinion that a man is drunk because of the smell of whisky on his breath, without showing anything unusual in his talk or actions, is very weak evidence.

Plaintiff had been driving an overloaded truck for seven or eight hours. It had no brakes on it, had broken down once, and, no doubt, he was very tired, and it was not unusual for the witnesses who saw him and smelled the odor of whisky about him, to think he was drunk.

The witness Clarence Brewster's testimony is of little value. He would not positively identify the plaintiff as the man he saw the night of the accident whom he thought was drunk, and was evidently mistaken, as he said the man he was testifying about was dressed in dark, oil field worker's clothes, and it is shown that plaintiff was dressed in a blue coat, a blue starched shirt, and a Stetson hat.

The only positive testimony as to plaintiff's intoxication, and that is only the opinion of the witnesses, without any action or words of plaintiff to substantiate the opinion, is that of Leonard Green, and the judge of the lower court seems to have based his finding of fact upon this witness' testimony. The lower judge speaks of the disinterestedness of the witness Leonard Green. The evidence shows that at the time he gave his testimony, he was living in Jackson, Miss., and that he came back to Monroe especially to have his deposition taken in this case; the defendant paying the expenses of the trip. Regardless of whether or not he was interested in the outcome, his testimony, without giving more reasons for his conclusion, is of very little value.

Without considering the testimony of plaintiff in rebuttal of defendant's testimony, we think defendant has failed to sustain its defense of drunkenness on the part of plaintiff, or intoxication to such a degree as would bar him from recovery, as set out in the Workmen's Compensation Law of Louisiana.

Plaintiff, however, offered the testimony of D. S. Futrell, who helped plaintiff to get out from under the overturned truck and also helped put him in the car to be taken to the sanitarium. He did not smell whisky on plaintiff's breath; he asked plaintiff his name; for whom he was working and where he wanted to go; to which he replied, "A. E. Dollar," named the defendant as his employer, and asked to be taken to the sanitarium at Monroe.

When they tried to get the truck off of plaintiff, he asked them not to rock the truck as it was punching him in the eye. He talked rationally and normally, and there was no indication of intoxication.

Spencer Brewster, who helped the witness Futrell, testified the same as Futrell, and Mrs. D. S. Futrell corroborated in full their testimony.

Dr. Marvin T. Green, the doctor who attended plaintiff immediately after the accident, testified that by looking for it, he

could detect the odor of whisky; that plaintiff was not intoxicated so as to affect his thinking power or muscles. He did not wash plaintiff out, as was usual in the treatment of drunken patients. He did not consider him drunk.

Mrs. V. R. Andrews, the nurse who attended him immediately after the accident, did not smell whisky on the plaintiff; he was perfectly rational; asked for the best doctor that he might be properly taken care of, and asked that his wife be notified.

Any suspicion of intoxication that might have been raised by the testimony of defendant's witnesses is wiped out by the testimony offered by plaintiff's witnesses, together with the three defense witnesses who carried plaintiff to the sanitarium.

The Workmen's Compensation Law of Louisiana (Act No. 20 of 1914, sec. 28, subd. 2), places the burden of proving the defense of intoxication upon the defendant and, in this case, the defendant has failed to discharge that burden and its defense of intoxication falls.

We have great respect for the ability and the fairness of the learned judge of the lower court who passed on this case and hesitate to overrule his finding of fact, but the testimony in this case convinces us that his opinion is clearly erroneous, wherein he found that plaintiff was intoxicated to such an extent as to have lost the use of his faculties.

The car plaintiff was driving was overloaded and, without brakes, and the evidence shows that between Ruston and the place of the accident, there are a number of very sharp curves that plaintiff made without accident, much sharper than the curve where the accident happened. The place where the accident occurred was at the foot of a not very steep hill, which plaintiff had just descended. At that point, the road curves to the left, and the evidence shows that the truck had gone about fifteen yards into the curve when it left the road and went over the embankment. This was a detour road, due to the paving of the Dixie-Overland Highway at that time, and the record shows that only a few weeks before the accident much loose gravel had been placed on the road at this point and, as one witness puts it, "there was about four inches of loose gravel on the road at the place of the accident."

Plaintiff described the truck and load as follows:

"I was going up the hill and had such a load on my truck, and when I would hit a rough place, the front end of my truck would jump up and the weight was on the back end and you would have to back up, and no brakes * * * after I got on top of the hill and the loose gravel it flew up in front and went down the road with me and straight down the bank and overturned."

He further testified that when the front wheels hit the loose gravel, they went right out of the road and knocked the truck out of his control.

Plaintiff was pinned beneath the truck, where he remained for about fifteen minutes before he was extricated and carried to the Ruston-Lincoln Sanitarium, at Ruston, where he remained for twenty-three days. At the time he entered the sanitarium, he was in a state of shock and collapse; had general contusions, marked lacerations on the face and junction of the nose and face, with dirt, grit, and dust ground into them, and the blow on the nose caused severe hemorrhage and abrasion.

The index finger on the right hand was lacerated, a gaping wound and swelled. An X-ray taken immediately afterwards disclosed an irregular fracture involving the angle of the right scapula (right shoulder blade). The nose was greatly disfigured; a scar extending down the side of the nose, the nose being fractured across the bridge and entirely laid over to one side, and one could look into the nasal cavity. The septum was all broken and torn open.

At the time of trial in the lower court, plaintiff had developed neuritis in his shoulder; his finger was permanently stiff, he not being able to close it. The septum, the middle portion of the nose, is markedly deviated, and a separation of the septum, and the two edges do not approximate; there is an overlapping, and the doctor said:

"I can put a probe up one side of the nose and make it come out,—commonly known as a hole in the septum."

There is a dividing obstruction in the entire upper half of the nose from the point of separation. Plaintiff cannot breathe normally through the nose and the condition of the nose is permanent. In breathing, he has none of the aerating functions, the air passing through the lower respiratory channels instead of over the three turbines which moisten and purify the air. He necessarily has to do most of his breathing through his mouth. The frontal sinus is affected and any amount of exercise causes headaches and his nose to bleed.

The consensus of opinion of the doctors testifying is that an operation will be necessary to afford plaintiff any relief; that if successful, he will be relieved, otherwise, not; and that it would be a very dangerous operation.

We know of no authority by which plaintiff could be required to undergo such an operation. It is a matter left entirely to him.

The consensus of opinion of all the doctors is that he is not totally, permanently disabled, but that he is permanently, partially disabled to follow his usual line of work, and he should have judgment accordingly.

Plaintiff is indebted to the sanitarium, nurses, and doctors for more than $250, for services rendered on account of the injuries received in this accident, and should have judgment for the sum of $250 to cover same. Although plaintiff is only partially disabled, the record fails to show what his earning capacity is now. We therefore think that he is entitled to the sum of $20 per week for a period of disability not to exceed three hundred weeks. Wunderlich v. Simpkin, 5 La. App. 35; Hedrick v. W. K. Henderson Iron Works & Supply Co., 5 La. App. 15; Wm. M. McMullen v. La. Central Lbr. Co., 3 La. App. 562.

Our finding in this case makes it necessary to redraft the judgment of the lower court. It is therefore ordered, adjudged, and decreed that the plaintiff, A. E. Dollar, do have and recover judgment against defendant, Southern States Company, Incorporated, in the full sum of $20 per week, for a period of disability not to exceed three hundred weeks, with 5 per cent per annum interest on each payment from the date same is due, payments to begin May 10, 1930; and for the further sum of $250 for surgical, medical, and hospital services; and for all costs of both courts.