## WHITE v. TREMONT LUMBER CO.
### No. 4231.

Court of Appeal of Louisiana. Second Circuit.

May 20, 1932.

H. W. Ayres, of Jonesboro, and John F. Phillips, of Shreveport, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

## On the Motion to Dismiss.

McGREGOR, J.

This is a suit under the Employers' Liability Act (Act No. 20 of 1914 and subsequent amendments thereto). Plaintiff is claiming compensation in the sum of 65 per cent. of $16.50 per week on the basis of total, permanent disability for a period not exceeding four hundred weeks.

The case was tried and submitted on June 8, 1931, and was decided by written opinion handed down in chambers and filed on August 24, 1931. In this opinion judgment was granted in favor of the plaintiff for compensation at the rate of 65 per cent. of $16.50 per week for a period of eighteen weeks, beginning June 25, 1930, and at the rate of 65 per cent. of $10.50 per week for a period of twenty-one weeks, beginning at the expiration of the eighteen-week period, all with interest as provided by law and subject to a credit of $180.50.

Appended to the written opinion of the court below there is the usual order for suspensive and devolutive appeals granted to both parties separately. The plaintiff perfected his devolutive appeal by filing the required bond on September 26, 1931. No appeal was perfected by or on behalf of the defendant.

Plaintiff's appeal, with the record in the case, was duly filed in this court, and on April 7, 1932, the defendant and appellee filed a motion to dismiss on the alleged ground that the judgment as rendered had been paid in full by defendant and accepted by the plaintiff. on October 10, 1931.

Attached to the motion is a canceled voucher check of the defendant for the sum of $161.11, payable to the order of M. G. White and H. W. Ayres (his attorney of record). The check is indorsed by the payees, and in the body of the voucher are typed the words, "Payment Judgment, M. G. White vs. Tremont Lumber Company." It is urged that the simple production of this paid voucher is sufficient evidence of plaintiff's acquiescence in the judgment as rendered and justifies the dismissal of his appeal. In the alternative defendant asks that the case be remanded for the purpose of taking testimony on the subject.

In their brief counsel for the defendant state that the plaintiff requested the defendant to pay the amount of the judgment and made threats of having a writ of fieri facias issued in the event his request was not complied with.

The question of the right of a plaintiff in a compensation suit to accept payment of the amount for which the court gave judgment during the pendency of plaintiff's appeal to have the amount of the judgment raised, and of the effect that such acceptance has upon the status of the case in the appellate court, has been passed upon several times.

Bryan v. Louisiana Oil Refining Corp., 2 La. App. 494. This suit is on all fours with the one under consideration. Plaintiff sued for compensation for a period of three hundred weeks. There was judgment in the district court awarding plaintiff compensation at the rate of $18 per week for fifty-two weeks, dating from the date of the injury. Being dissatisfied with that portion of the judgment that rejected his demand for compensation beyond the period of fifty-two weeks, he appealed the case to this court. While the case was pending on appeal, but after the expiration of the fifty-two week period, the plaintiff issued execution on the judgment which he obtained in the district court and collected it in full. Defendant thereupon filed a motion in this court to dismiss the appeal on the ground of acquiescence. In overruling the motion, this court, in an opinion written by Judge Odom, said:

"Plaintiff sued for compensation for 300 weeks and was awarded compensation for only 52 weeks. Defendant did not appeal. Plaintiff executed the judgment which granted him compensation for 52 weeks. That was an acquiescence in the judgment to that extent only, and in executing that part of the judgment which was in his favor he did not acquiesce in that portion of it which was against him.

"The judgment was in his favor for 52 weeks and against him for 248 weeks. He appealed only from that part of the judgment which was against him."

Chandler v. Oil Fields Gas Co., 2 La. App. 778. In this case the plaintiff sued for compensation at the rate of $18 per week on the basis of total, permanent disability for a period not exceeding four hundred weeks. Judgment was rendered in his favor at the rate of $18 per week for a period not to exceed one hundred twenty-five weeks. He appealed from this decision. Previous to the time of trial he had received the sum of $108, being six weeks' compensation, for which the judgment gives credit. After the trial and during the pendency of the case on appeal, the defendant continued to accept these payments of $18 per week. Defendant filed a motion to dismiss the appeal on the ground

that the plaintiff had acquiesced in the judgment by thus receiving compensation in installments. In overruling the motion, the court relied upon the case of Kittredge v. Grau, 158 La. 154, 103 So. 723, and in the course of the opinion said:

"On the authority of Kittredge v. Grau, 158 La. 154, 103 So. 723, we think the motion to dismiss must be overruled.

"In that case plaintiff sued to be declared the owner of certain stock and, in the alternative, for a money judgment for the value of the stock. They obtained judgment in the lower court for twenty-eight hundred and odd dollars, which was less than they claimed. They took an appeal, which they characterized as both a suspensive and a devolutive appeal. After the time allowed for taking a suspensive appeal had expired, defendants filed an answer to plaintiff's appeal, praying that the judgment be amended by reducing the amount to sixteen hundred and odd dollars. Thereafter plaintiff's attorney had the judgment of the lower court recorded in the mortgage office. Defendants moved to dismiss the appeal on the theory that the recording of this judgment was an execution of it and therefore an acquiescence in it.

"The court overruled the motion to dismiss, pointing out that Article 567 of the Code of Practice, which provides that the party against whom a judgment has been rendered cannot appeal if he has acquiesced in same by executing it voluntarily was founded expressly upon the theory of acquiescence and that plaintiff had not acquiesced in the judgment of the lower court so far as it was against him by recording the judgment awarding him part of what he claimed in the alternative.

"In this case plaintiff is claiming $18 per week for 400 weeks. We do not think that his acceptance of $18 per week as time goes on is an acquiescence in the judgment limiting his right to 125 weeks.

"Counsel for appellee seeks to differentiate this case from the Kittredge Case by saying that in that case the appeal was from the judgment only insofar as it rejected their demands, whereas in this case the appeal is from the judgment generally.

"It is true in the Kittredge Case the court says: 'The plaintiffs in this case appealed from the judgment only insofar as it rejected their demand.'

"We do not understand this to mean, though, that in their appeal the plaintiffs specified that it was from the judgment so far as it rejected their demand but only that that was the logical effect of the appeal which was taken."

Cory v. Askew, 169 La. 479, 125 So. 455. This is a review of a case from this court on a writ of certiorari. The plaintiff sued the defendant for compensation at the rate of $20 per week for four hundred weeks. At the trial judgment was awarded to the plaintiff for $20 per week for five weeks. Plaintiff prayed for an order of appeal from the judgment "only in so far as same rejects his demands," and was granted an order of appeal "restricted to that part (of the judgment) that rejects his demands." After the case had been lodged in this court on appeal, the plaintiff issued execution on his judgment and collected it. Thereupon the defendant filed a motion to dismiss the appeal on the ground that the plaintiff had voluntarily executed the judgment and had thereby acquiesced in it. The case was remanded to the lower court "for the trial of the issue of whether plaintiff has acquiesced in the judgment appealed from." Id., 11 La. App. 110, 120 So. 779, 781. A rehearing was granted, but the court was still of the opinion that the case should be remanded to the lower court for the purpose of taking testimony on the question of acquiescence, so the original judgment was reinstated. 11 La. App. 645, 123 So. 435. The case was then carried to the Supreme Court on a writ of certiorari, where it was held that the execution of the judgment as rendered by the district court did not justify the dismissal of plaintiff's appeal. In passing upon the subject, the court said:

"In the case of Kittredge v. Grau, 158 La. 154, 103 So. 723, this court held that, where a judgment was rendered for the plaintiff for a part of his claim, the recording of the judgment by the plaintiff was not an acquiescence in the judgment rejecting the balance of the sum sued for. In the case of H. D. Chandler v. Oil Fields Gas Co., Inc., 2 La. App. 778, the motion to dismiss the appeal upon the ground of alleged acquiescence in the judgment was denied on the authority of Kittredge v. Grau, cited supra."

The law relied upon by the defendant is article 567 of the Code of Practice, which provides that:

"The party against whom judgment has been rendered can not appeal * * * if he have acquiesced in the same." (Italics ours.)

In the case under consideration the plaintiff did not appeal from that portion of the judgment which he has collected. The defendant never appealed and that part of the judgment was no longer a matter of controversy. The defendant is the one that acquiesced in it by not appealing from it, by not answering plaintiff's appeal, and by paying it. The article of the Code relied upon would bar the defendant from an appeal under the circumstances of the case, but has no application to the plaintiff whatever. The motion to dismiss has no merit and is, therefore, overruled.

### On the Merits.

Plaintiff was injured while in the employ of the defendant by the falling of a tree

which he had assisted in sawing down. As the tree fell it kicked over the stump and knocked him down and broke the large bone in his right leg about halfway between the knee and ankle. There were minor injuries to other parts of his body, but so far as the record discloses they were not of much consequence.

On June 23, 1930, the date of the injury, the plaintiff was taken to the St. Francis Sanitarium in the city of Monroe, where he was placed under the care and treatment of Dr. J. E. Walsworth, one of the most able and skillful surgeons in the state. The injured limb was immobilized and set in a plaster cast, in which it remained for several weeks. About thirty-six hours after his admission to the sanitarium, the plaintiff lapsed into a state of unconsciousness which continued until June 28. According to the opinion of physicians in charge of him, the cause of this condition was what is known as a "fat embolism." It is the testimony of the physicians in the case that there were no serious results from this situation and that there was complete recovery therefrom. Plaintiff remained in the sanitarium for a period of nine days, after which time he was removed to his father's home in the defendant's logging camp near the town of Chataham. Continuously from the time he left the sanitarium until about November 1, 1930, he remained under the observation and treatment of Dr. Walsworth. At this time Dr. Walsworth gave him a final examination and found his condition most satisfactory and discharged him as cured and ready for immediate return to work. The doctor stated in his testimony that his conclusions at the time were made not only on the basis of a clinical interpretation, but also upon the suggestion of the roentgenologist, or X-ray man.

On March 23, 1931, Dr. Walsworth examined the plaintiff again in connection with Dr. D. M. Moore and Dr. C. P. Gray. Dr. Moore made an X-ray picture of the injured limb at that time. With reference to what he found as a result of this examination, Dr. Walsworth testified as follows:

"The clinical examination showed the injured limb to be in every way comparative with the opposite limb. It would be most difficult for a physician trained in the art of physical examinations to determine which limb had been injured unless he had had some coaching. The function of the knee was absolutely 100%. The function of the ankle joint which has for its action flexion and extension was 100%. The function of the subastrogaloid joint which has its function the lateral rotation of the foot in conjunction with the bones of the foot, were 100%. The oscalsis or the heel bone with its tendinous (tendo achiles) attachment was normal and its function normal. There was absolutely no backward or forward bow of the leg and a slight lateral displacement indicated at the time of the injury had been cared for through the natural process of calcification and canalization as confirmed by the X-ray picture, —that is the canal of the bone itself has been completely restored and were it not for the fact that there remains the callous growth, which will take several months yet to be absorbed, it would be impossible to tell from an X-ray standpoint that there had ever been a fracture. There was absolutely no evidence of tenderness, adhesions, muscle derangement, nerve or blood vessel disturbance. The patient complained a little bit of a slight discomfort in walking, but there was no physical evidence manifested throughout any of the manipulative measures through which he was carried to suggest a confirmation of pain, and in fact, he agreed with us that at no time throughout the examination did we bring about discomfort and further agreed in our examination on October 29th. He saw no reason why he could not re-assume his usual duties, which were discussed with him in detail."

At another place in his testimony, he said:

"This man's leg would be considered by the best authorities in orthopedic surgery with whom I have studied—and I have studied with the best—as being 100% satisfactory."

Dr. Moore, a roentgenologist of high standing in the city of Monroe, testified that he made four X-ray examinations of plaintiff's injury on June 23, 1930, August 28, 1930, October 29, 1930, and March 23, 1931. It is his testimony that on and after the last examination on March 23, 1931, the functional condition of the leg was 100 per cent., and that there was no indication of an injury of such nature to interfere with normal functions of the limb.

Dr. C. P. Gray, an eminent surgeon of Monroe, also examined the plaintiff on March 23, 1931, in conjunction with Drs. Walsworth and Moore. His testimony in part was as follows:

"Mr. White was a young man and to me had the appearance of a healthy, robust individual. He was stripped for examination and it was noted that he was muscularly well developed. His general examination was negative. The examination was made more closely with reference to a leg which was supposed to have been fractured about June of last year. From an examination of this leg there was no abnormality noted, in fact had I not been informed that the leg had been broken I rather doubt that I would have been able to detect that it had been fractured without the aid of X-ray pictures. * * *

"After my experience in the practice of medicine for 22 years, practice being largely devoted to surgery within the past 12 years, I would state that my opinion is that the leg,

the pictures of which I hold, is as nearly normal as it is possible for a leg to be after having sustained the fracture that this leg had. * * * "

Opposed to the testimony of the above physicians, the plaintiff introduced the testimony of Dr. S. W. Boyce, of Shreveport, who examined him on or about January 20, 1931, in connection with an X-ray examination made at that time by Dr. Harrell G. F. Edwards. It was his testimony that there was some swelling in the ankle caused by the fact that the fracture of the tibia had united in an angular manner. He was of the opinion that, owing to the shape in which he found the bone after the injury had healed, there would always be more or less pain and swelling, and that the only remedy was to break the bone again and reset it. None of the other physicians agreed with him on this point, and since the three physicians who testified for the defendant based their conclusions on an examination made over two months after Dr. Boyce made his examination, we are bound to accept their unanimous conclusion that the injury had perfectly healed without leaving any disability whatever.

The plaintiff himself testified that he had never been able to do any kind of work from the date of the injury down to the day of the trial. In this statement he was corroborated by several witnesses. On the other hand, however, the defendant produced a number of witnesses who testified equally as positively that from their observation of the plaintiff he had completely recovered.

The trial judge wrote a very able opinion in the case which is most convincing. In fact, it could well be adopted as our own, for we find no error whatever in his findings of fact. He saw and heard the witnesses testify and is personally acquainted with the experts and places a very high estimate on their testimony. In discussing these witnesses and in announcing his conclusion, he said in part as follows:

"On the date of the trial of this case plaintiff testified that his leg 'still hurts and swells up every evening'. He testified that he had not been able to do any work since the injury.

"The evidence shows that plaintiff had not done any work since the date of the injury. He was totally disabled to do any work until October 29, 1930. That fact is admitted. But in view of Dr. Walsworth's testimony as to his condition on that date and the testimony of Dr. Walsworth and Dr. Gray as to his condition on March 23, 1931, I cannot find and hold that he was totally disabled on any date subsequent to October 29, 1930, notwithstanding plaintiff's testimony to the contrary. However, in the face of Dr. Boyce's uncontradicted testimony as to the condition of plaintiff's leg on January 20, 1931, I cannot find that plaintiff had entirely recovered on that date. Dr. Boyce said that the moderate amount of swelling he found in plaintiff's leg was caused by the fracture. That swelling had disappeared on March 23, 1931, and there is no evidence that there was any swelling in the leg on the day of trial. To hold that plaintiff's leg was not well and that he had not fully recovered on March 23, 1931, would be to disregard the testimony of two of the most eminent surgeons in the country and accept the unconfirmed testimony of plaintiff as to his condition. I think the evidence conclusive that plaintiff had fully recovered by March 23, 1931. He is entitled to compensation to that date, but no longer. This finding gives plaintiff the benefit of all doubt.

"In reaching this conclusion I have not overlooked plaintiff's claim that he suffered a serious injury to his back and hips. The evidence in the case does not sustain this claim. So far as the record shows, plaintiff never, at any time, complained to any of the doctors who examined him that he was suffering or had suffered any pain in these areas. And none of these doctors found anything wrong there in any of their examinations. It is not reasonable that he would have continued to suffer to the extent he claims without consulting a doctor, hence, I do not think such claim deserves serious consideration."

### Quantum of Compensation.

■ On the trial of the case it was the contention of the defendant that on or before October 29, 1930, the plaintiff had fully recovered, and that the $180.50 which is admitted to have been paid was all that the plaintiff is entitled to. But Dr. Boyce examined him in January, 1931, and says that he found some disability. This is contradicted by Dr. Walsworth, who discharged him as cured on October 29, 1930. In order to give plaintiff the benefit of all doubt, the trial judge allowed compensation for partial disability from October 29, 1930, to March 23, 1931, a period of twenty-one weeks, at the rate of 65 per cent. of $10.50 per week. This finding is rather arbitrary, but since it is in favor of the plaintiff and the defendant has acquiesced in it, it cannot, of course, be disturbed. It appears that the jurisprudence of this state is fairly well settled that where partial disability is well established and there is no evidence in the record which enables the court to fix the amount which the plaintiff can earn in his condition of partial disability, compensation will be allowed as though the disability were total. Dollar v. Southern States Co., 18 La. App. 178, 135 So. 758. But in this case we do not feel justified in disturbing the judgment of the lower court, as the opinion well says that the plaintiff has been given the benefit of all doubt.

For the reasons assigned, the judgment appealed from is affirmed; the costs of the lower court to be paid by the defendant and appellee, and those of this court by the plaintiff and appellant.