95 So.2d 49 (1957)
Freeman PATTERSON, Plaintiff-Appellee,
v.
CARGO SERVICES, Inc. and the American Mutual Liability Insurance Co., Defendants-Appellants.
No. 20950.
Court of Appeal of Louisiana, Orleans.
May 13, 1957.
Arnold C. Jacobs, New Orleans, for plaintiff-appellee.
Alfred C. Kammer, New Orleans, Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, of counsel, for defendants-appellants.
LOUIS H. YARRUT, Judge ad hoc.
From a judgment allowing an injured employee full compensation for total and permanent disability, and not compelling such employee to undergo surgery, both defendants have appealed. Because plaintiff's prayer for statutory penalties and attorney's fees was disallowed, plaintiff has answered the appeal for an amendment allowing these items.
There is no question of fact involved, only two issues of law:
*50 (1) Whether plaintiff is under a duty to submit to surgery tendered by defendants at their cost, and whether his refusal to submit was arbitrary and unreasonable;
(2) Whether the action of defendants in summarily discontinuing compensation payments when plaintiff was admittedly unable to return to work, simply because he would not submit to surgery, was arbitrary and unreasonable and subjected them to the penalties provided by LSA-R.S. 22:658, as interpreted by Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Fruge v. Pacific Employers Insurance Company, 226 La. 530, 76 So.2d 719; Cummings v. Albert, La.App., 86 So.2d 727.
The District Judge, in allowing full compensation, gave the following written reasons:
"The testimony of the orthopedic surgeons, Drs. Battalora and Redler, was substantially to the effect that the surgery involved would take from 30 to 60 minutes and involved entering the knee joint;"
The operation "would necessarily be performed either under a spinal or general anesthesia;"
"There was some element of risk of life attached to the operation, and no physician could positively state that the operation would be successful."
These are the undisputed facts: Plaintiff was injured on May 2, 1956, while working as a stevedore, which resulted in a rupture of the lateral medial meniscus, or semilunar cartilage of his left knee. He was treated by Dr. Joseph C. Menendez almost daily during the month of May; approximately every other day during the month of June; and with decreasing visits during July, August, September and October. He was paid compensation for a period of eighteen weeks, and also medical and hospital bills.
He was examined by Dr. Irving Redler, an orthopedic specialist, on June 22, 1956; and by Dr. George C. Battalora, an orthopedic specialist and plaintiff's own doctor, on November 5, 1956, both recommending that an arthrotomy be performed. Defendants tendered plaintiff surgery, with the admonition that, unless it was accepted within fifteen days, the weekly compensation payments would be suspended. This tender was refused and compensation payments were discontinued, resulting in the present suit.
Though plaintiff sued both American Mutual Liability Insurance Company and Cargo Services, Inc., no citation was ever issued or service ever made on Cargo Services, Inc., and answer to plaintiff's petition was filed only on behalf of American Mutual Liability Insurance Company.
Dr. Menendez, general surgeon, and Dr. Battalora and Dr. Redler, orthopedic surgeons, were practically in complete agreement.
Dr. Battalora says that an operation, such as he recommended, would take, within approximate limits, about forty minutes; some surgeons use a spinal anesthesia, but he prefers general anesthesia; that the anesthesia would be administered by a specialist. Under cross-examination he said that some orthopedists use the spinal rather than the general anesthesia.
Dr. Redler states that such an operation varies; that he has taken as little as twelve minutes, and as much as an hour; and, on the average, about thirty minutes; it could be performed with spinal or local anesthesia.
Dr. Menendez uses what is called a sacral block, or a form of sacral anesthesia, low spinal.
With regard to the element of risk involved, Dr. Battalora testified there is always some danger incident to a surgical procedure although it is quite minimal; that he had performed several hundred similar operations and had never lost a patient; that he would not hesitate to perform the operation; that it was possible, but highly improbable, that plaintiff would get well without an operation.
*51 Dr. Redler testified that he has performed over 300 such operations and would have no hesitancy in operating on plaintiff; and did not think he would be jeopardizing plaintiff's life in any way; that the operation should relieve his pain, and it should relieve the locking of the knee, and should permit bending the knee.
Dr. Menendez also testified that he performed hundreds of such operations; that he had had excellent results from the operations and would expect to get good results if an operation were performed. He recommended surgery and would expect plaintiff to have complete recovery and return to his former occupation with no disability; that he would have no hesitancy in performing the operation, and the element of risk would be no more than one would expect when crossing the street.
The only theory upon which an injured employee is denied compensation, when he refuses to submit to a surgical operation, is that he unreasonably refuses proper medical treatment: Powers v. Allied Chemical & Dye Corporation, 46 So.2d 332. The compensation statute does not define what is meant by "proper medical treatment," but our courts have uniformly refused to order an injured employee to submit to surgery when it involved opening the abdominal or chest cavities, the lumbar region or bone joint, and required general or spinal anesthesia: Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759; Crawford v. Tampa Inter-Ocean S.S. Co., Inc., La.App., 155 So. 409; O'Donnell v. Fortuna Oil Co., 2 La.App. 462; Johnson v. U. S. Fidelity & Guaranty Co., 58 So.2d 261; Williams v. Southern Advance Bag & Paper Co., Inc., La.App., 87 So.2d 165.
In reviewing the jurisprudence regarding compulsory surgical operations, we find the case of Moore v. List & Westherly Construction Co., La.App., 144 So. 147. It was held error for the trial court, in conjunction with an award for the loss of the use of a hand, caused by a cut in the palm which severed the tendon of the middle finger, to order further that, in the event the employer should offer an operation at its own expense and the employee should refuse, compensation should cease. The Court stated that the law did not require anyone to submit to a surgical operation and, even though it might be the opinion of all the doctors that the chances would be largely in favor of full recovery, there is always some risk in every operation, and it is within the discretion of the injured party whether or not he will submit thereto.
In Yarbrough v. Great American Indemnity Co., La.App., 159 So. 438, 441, the refusal of a laborer, 52 years of age, who had sustained an injury to the upper part of femur of the left leg, extending to the left hip joint, to submit to an operation to remove a bony spur that had formed around the fractured bone and muscles, was held not to be unreasonable, since it would have been necessary to lay the flesh open with attending pain and discomfort for about two days, and about six weeks required for recovery, and another six weeks to regain the function of the leg. The Court there expressed the opinion that, "from the viewpoint of a seasoned surgeon such an operation is not considered serious, but to the lay mind a different opinion is obvious". The court adopted the viewpoint that, under the jurisprudence, it would not order an operation.
In O'Donnell v. Fortuna Oil Co., supra, the Court said:
"True, the surgeon's knife might easily relieve the patient of his burden, but who has the right to say to him that he must undergo an operation fraught, as operations always are, with more or less danger?"
The general rule, as set forth in 73 A.L. R. 1307, is that where the operation is of a major character and attended with serious risk to life or limb, an injured employee's refusal to submit thereto is not unreasonable, and compensation should not be denied *52 on that account; citing Dollar v. Southern States Co., Inc., 18 La.App. 178, 135 So. 758; Benoit v. American Mutual Liability Ins. Co., La.App., 162 So. 603. See 105 A.L.R. 1470.
The cases which came closest to requiring the employee to submit to surgery were with reference to injuries to the extremities, knees, fingers, shoulders but, with rare exception, some reason was found not to require surgery.
The case of Fredieu v. Mansfield Hardwood Lumber Co., La.App., 53 So.2d 170, 173, is very similar to the case at bar. In that case, plaintiff's right knee joint was injured, and the injuries were considered to be totally disabling in character. Plaintiff refused defendant's offer of an operation. In deciding for defendant, the Court said:
"We are convinced that plaintiff's ability to resume work can and will be restored from operations by a competent surgeon, and that such an operation will be attended by a minimum if any, danger of ill effects. He owes it to himself, at least, to submit to such an operation rather than go through life, possibly a cripple.
"We are cognizant of the fact that courts are reluctant to require injured litigants to submit to surgical operations as a condition precedent to payment of workmen's compensation, and we agree with this attitude. See: Yarbrough v. Great American Indemnity Company, La.App., 159 So. 438; Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759; Simmons v. Blair, 194 La. 672, 194 So. 585, 586.
"However, we can conceive of cases, such as the one before us, where the surgical operation is so relatively simple and the advantages to be procured thereby are so nearly certain, that the complainant should be required to undergo such. If the operation does not bring about the hoped-for results, very little, if any harm will have been done."
Another case involving a knee injury is French v. Employers Mutual Liability Ins. Co. of Wisconsin, La.App., 70 So.2d 179, 189. The medical testimony was that the medial semilunar cartilage had been torn. After again referring to and analyzing quite a number of preceding cases, the Court said:
"We are convinced from all of the testimony in the case that plaintiff's condition can be corrected, if not completely cured, by a relatively simple operation; that such an operation is in no sense dangerous to life, or attended by unusual risk, and is reasonably sure of success, and that plaintiff is under a duty to submit to such operation, without cost to him, and by an expert of his choice, in order to correct and relieve his existing disability and in order to restore himself to a state of usefulness to himself, his family, and society."
A writ of certiorari to the Supreme Court was granted. However, on joint motion the writs were vacated and the record returned to the Lower Court in November of 1954, evidently for a compromise settlement.
In Simmons v. Blair, 194 La. 672, 194 So. 585, our Supreme Court held that the refusal to accept surgery of the knee in a case similar to the instant case was not unreasonable, as the injury to plaintiff's right knee consisted of a fractured internal semilunar cartilage which protruded to the medial side of the knee joint, causing a tumor mass or growth at that point; and that the medical testimony, whether the operation was simple or unattended by appreciable risk or pain, was conflicting.
In Watson v. T. Smith and Son, Inc., La.App., 88 So.2d 69, 72, this Court stated that, in order to determine whether plaintiff should be required to submit to an operation, "all of the surrounding conditions *53 and circumstances must be inquired into" since "each case * * * must be decided on its own peculiar set of facts," and held that it was not unreasonable for the plaintiff to refuse to undergo an operation for the removal of a ganglion, a growth on the wrist, because the ganglion was apt to recur.
In Ashworth v. Calcasieu Paper Co., La. App., 85 So.2d 681, plaintiff sustained a knee injury similar to the one here. The defense was that he should submit to an operation to correct the medial meniscus condition. The Court held that, since plaintiff also had a hernia which was disabling, it would be inappropriate for the Court to issue any dicta concerning whether plaintiff should be required to submit to an operation.
Benefield v. Zach Brooks Drilling Co., La.App., 59 So.2d 710, involved a serious injury to the muscles, ligaments and tendons of plaintiff's right arm in the area of the shoulder. The testimony of the medical experts was conclusive that the injury was permanently and totally disabling, and the only hope for any real relief was an operation. The Court held that, while the evidence in the record justified the conclusion that such an operation was relatively simple was not attended with any extensive pain or suffering, and there was a minimum danger of fatal results, there was left one important consideration, namely, whether an operation would be reasonably certain to restore the full use and function of the arm, and that, under the facts adduced, they were constrained to find that this point had not been affirmatively established, and decided against defendant.
In the early case of Leday v. Lake Charles Pipe & Supply Co., La.App., 185 So. 655, 657, the Court, on rehearing, said:
"The most serious question presented is whether or not plaintiff should be required to submit to the amputation of his right index finger, and thus relieve the disability and minimize the damage. Our jurisprudence is well settled that an employee cannot be required to submit to an operation to relieve a disability where the medical testimony shows that the operation will be accompanied by great pain and may seriously endanger life, or where there is doubt as to the removal of the disability by the operation. In such a case the employee is not required to endanger his life or gamble with his chance of recovery by submitting to a dangerous and uncertain operation. But where the medical testimony shows, as it does in this case, that the operation is a minor one, unattended by danger of any serious consequences, with little pain and suffering, and with almost a certainty of success and relief from the disability, it would be unfair and inequitable for plaintiff to continue to draw full compensation when he has it within his power to minimize the damage by submitting to a minor and relatively simple operation. See Crawford v. Tampa Inter-Ocean S.S. Company, Inc., La.App., 155 So. 409, and cases there cited; also Murphy v. [B] Mutti, Inc., La.App., 166 So. 493."
In the very recent case of Borders v. Lumbermens Mutual Casualty Co., La.App., 90 So.2d 409, 411, plaintiff was injured in an accident which resulted in a crushing of the index finger of his right hand. The sole question involved was whether plaintiff's refusal to submit to a tendered operation was reasonable. The Court summarized the criteria to determine whether an injured employee's refusal to submit to operative procedure is reasonable or not, as follows:
"1. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
"2. Will the operation submit the claimant to a minimum of danger and *54 be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
"3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence?"
The Court found the preponderance of the evidence indicated that, even after the recommended operation amputating his index finger, plaintiff would continue to be totally disabled from performing the duties of an iron worker; and felt that it was not unreasonable for him to refuse to submit to an operation.
With reference to the unknown and hidden dangers of the operation tendered plaintiff, Dr. Battalora, under cross-examination, stated that arthritis was the "bugbear" in such operations because, unless it was in an advanced stage, it could only be discovered during the operation, leaving nothing to be done except remove the torn cartilage. When asked what recovery would be effected, he said the recovery prognosis would be doubtful because it would be hard to tell just how much aggravation the operative procedure had induced the arthritic process. Briefly, Dr. Battalora made it clear that he would not operate if arthritis were present, and he could not be sure until he got into the knee joint, when it would be too late to turn back.
From our jurisprudence it seems clear that an employee has seldom been compelled to undergo medical treatment necessitating surgery in a cavity of the body or bone joint regardless of what varying reasons may have been given. Any change in the statute to make it mandatory for an employee to submit to corrective surgery as a condition precedent to receiving compensation is a function of the legislature, not the courts.
With reference to statutory penalties and attorney's fees, from the holdings in Wright v. National Surety Corp., Fruge v. Pacific Employers Ins. Co., and Cummings v. Albert, supra, it seems clear that, where the insurer suspends the payment of compensation, notwithstanding that the employee is admittedly totally or partially disabled, it must be cast for costs and attorney's fees, should the employee ultimately be held entitled to compensation. It is the calculated risk that the insurer takes.
Since, as we have already stated, Cargo Services, Inc., was neither cited nor made an appearance, the suit against it should be dismissed.
Accordingly, the judgment appealed from in respect to the defendant, Cargo Services, Inc., is reversed and the plaintiff's suit as to that defendant is dismissed. The judgment is amended so as to hold the defendant, American Mutual Liability Insurance Company liable for a penalty of 12% on all weekly compensation payments which are now due, with a like penalty on all such payments which might become 60 days overdue in the future, together with an attorney's fee payable to plaintiff in the sum of $500. In all other respects the judgment appealed from is affirmed; all costs to be paid by defendant, American Mutual Liability Insurance Company.
Reversed in part; amended and affirmed in part.
JANVIER, J., absent, takes no part.