CARROLL, CHAS., Chief Judge.
By certiorari to the Industrial Commission in a workmen’s compensation case, petitioner challenges the practice by which the commission set aside a finding and adjudication of permanent total disability, for the purpose of rehabilitation exploration, before and as a required preliminary to adjudging the claimant’s disability status as to permanency.
Petitioner was found and adjudged by the deputy commissioner to have a status of permanent total disability. On review the full commission reversed the deputy,, by an order reading in part as follows:
“The claimant is a comparatively young man, being only 36 years of age. It is our opinion it would be doing a disservice to the injured employee, as well as to the community, to affirm an award of permanent total disability prior to exhausting all efforts to rehabilitate the injured employee by returning him to productiveness» By the same token, it also appears from, the record that the claimant’s attitude has been less than cooperative. It would seem,, therefore, that the present award of permanent total disability is premature; that this cause should be remanded to the Deputy Commissioner for further proceedings, and for a further effort and attempt to. rehabilitate the employee. The Deputy Commissioner on remand should solicit the assistance of our Rehabilitation Department in this connection. By the same token, the claimant must make an honest endeavor to cooperate with the personnel of our Rehabilitation Department.
“The Deputy Commissioner’s attention ia invited to Section 440.49(3), Florida Statutes [F.S.A.], which states in part as follows :
“ ‘ * * * if the injured employee without reasonable cause refuses to undertake the training or educational program determined by the Commission to be suitable for him, the Commission may in its discretion suspend, reduce or limit the compensation otherwise payable to such person under this chapter, any provisions of this chapter to the contrary notwithstanding/
“Inasmuch as the claimant is at present totally disabled, but it appearing that there is a good prospect of rehabilitating the claimant and reducing the degree of permanent disability, he should be placed back under the status of temporary total disability, pending efforts to restore him to *823 the productive labor market. In light of the views hereinabove expressed, it is
“Ordered that said Order of the Deputy Commissioner dated April 19, 1957, be and the same is hereby vacated and set aside, and said cause be and the same is hereby remanded to the Deputy Commissioner for further proceedings in light of the views hereinabove expressed.”
In a portion of the commissioner’s opinion other than the part quoted above, the commission appears to have disagreed with the deputy’s finding as to the reasonableness of the claimant’s refusal to have an operation, saying, “An examination of the record reveals that there is a dearth of evidence from which the Deputy could reasonably find that claimant’s refusal to undergo surgery is justified.”
This, and the statements of the commission as to a failure of the claimant to cooperate, show that the commission reversed and returned this matter in part for re-evaluation of status based on the commission’s view that claimant’s rejection of the recommended operation was unreasonable, as well as on the theory that rehabilitation under the statute was to precede, rather than to follow, adjudication of disability.
As we view the record, there was adequate evidence to support the deputy commissioner’s conclusion that claimant’s refusal to submit to a major operation on his back was not unreasonable. The fear which prompted his rejection of the recommended operation was not a fear of death, but a fear that his remaining ability of locomotion would be further impaired or lost. The doctors’ predictions of success and benefit from the major operation which they recommended, did not exclude from the mind of the petitioner the possibility of a bad result which he feared woúld deprive him of his already impaired ability to get around. Such a fear was not lacking in genuineness, and to the extent that the reversal order was based on the commission’s view that the petitioner’s refusal of the operation was unreasonable, the order was in error. This question was dealt with by the Supreme Court of Florida in Sultan & Chera Corp. v. Fallas, Fla. 1952, 59 So.2d 535, at page 537, where the court said:
“There can be no question that an injured employee will be denied compensation because of some disability which may be removed, or modified, by an operation of a simple character not involving serious suffering or danger of death. The authorities sustaining this principle are collected in O’Brien v. Albert A. Albrecht Co., 206 Mich. 101, 172 N.W. 601, 6 A.L.R. 1260.
“It is also well settled that when the operation is a serious one or a major operation and the injured party is informed of the nature of such operation and is genuinely afraid to undergo such operation, his refusal to submit will not defeat compensation. Jendrus v. Detroit Steel Products Co., 178 Mich. 265, 144 N.W. 563, L.R.A. 1916A, 381; Ramlow v. Moon Lake Ice Co., 192 Mich. 505, 158 N.W. 1027, L.R.A.1916F, 955; Poniatowski v. Stickley Bros. Co., 194 Mich. 294, 160 N.W. 569; Vonnegut Hardware Co. v. Rose, 68 Ind.App. 385, 120 N.E. 608; Dollar v. Southern State Co., 18 La. App. 178, 135 So. 758; Leavell Coal Co. v. Stamper, 163 Old. 289, 21 P.2d 1046.
* *****
“From this record there can be no doubt that the appellee has a genuine fear of undergoing the recommended pre-operative’ study and operation. He was fully informed of the nature of the treatment recommended. He may have been afraid of the known suffering he would experience, or the danger of having his spinal cord injured, or the danger of death. No doubt he had heard of many operations which had been successful, but the patients died.”
*824 See also annotations, 6 A.L.R. 1260; 18 A.L.R. 431; 73 A.L.R. 1303, and 105 A.L.R. 1470
Turning now to the question stated at the outset of this opinion, it was contended by petitioner that he was entitled to the benefit of the adjudication of permanent total disability, and that rehabilitation as provided for by the statute comes after such an adjudication, and not before it.
The petitioner’s contention in that respect is correct. The statute, section 440.-49, in dealing with rehabilitation in permanent disability cases, refers to persons who have been “adjudged” to be permanently disabled. A gloss is placed on this meaning of the statute by the provision in subsection 3 for determination as to rehabilitation to be made “within two years after a disability has been so adjudged.” Section 440.49, Fla.Stat., F.S.A., reads as follows:
“440.49. Rehabilitation of injured employees
“(1) In cases involving total or partial disability adjudged to be permanent the commission shall assist injured employees to obtain appropriate training, education and employment and may cooperate with federal and state agencies for vocational education and with any public or private agency cooperating with such federal or state agencies in the vocational rehabilitation of injured employees. The commission may, and it is authorized to, expend monies from the special fund established by § 440.50, for the purpose of assisting such injured employees to obtain appropriate training, education and employment in connection with their vocational rehabilitation.
“(2) Whenever the commission determines that there is a reasonable probability that with appropriate training or education a person entitled to compensation for total or partial disability adjudged to be permanent may be rehabilitated to the extent that he can become gainfully employed or increase his earning capacity and that it is for the best interests of such person to undertake such training or education, if the injured employee without reasonable cause refuses to undertake the training or educational program, determined by the commission to be-suitable for him, the commission may in its discretion suspend, reduce or limit the compensation otherwise payable to such person under this chapter,, any provisions of this chapter to the-contrary notwithstanding.
“(3) In cases involving total disability adjudged to be permanent, within two years after a disability has been so-adjudged, the commission shall determine whether there is a reasonable probability that with appropriate training or education the injured employee may be rehabilitated to the extent that he can become gainfully employed and whether it is for the best interests of such person to undertake such training or education; and whenever the commission determines that there is a reasonable probability that the injured employee may be so rehabilitated and that it is for his best interests, if the injured employee without reasonable cause refuses to undertake the training or educational program determined by the commission to- be suitable for him, the commission shall suspend or reduce by not less than fifty per cent the compensation otherwise payable to such employee under this chapter, any provisions of this chapter to the contrary notwithstanding.”
The enabling statute provides clearly and expressly that the rehabilitation matters authorized thereunder come after adjudication of permanent disability.
We are not concerned with the wisdom of the statute in that respect, but any such change as indicated by the commission’s *825 present policy, if desirable, should be a legislative matter, and we are now guided by the statute according to its present wording.
The petition for certiorari is granted, and for the reasons and to the extent set forth above, the order of the commission ■•to which it was directed is quashed.
HORTON and PEARSON, JJ., concur.