THOMPSON, Judge,
dissents.
I would find the deputy erred in awarding claimant’s attorney a fee and would reverse.
The claimant was injured in a compensa-ble accident on February 20, 1978. Although the employer/carrier (E/C) promptly accepted the claim and timely began payment of medical and temporary total disability (TTD) benefits, the claimant retained the attorney representing him in this proceeding approximately a month after the accident. On March 30, 1978, two days after being retained, the attorney filed a “shotgun” claim requesting all benefits to which claimant might be entitled under the act, including a specific claim for permanent total disability (PTD) benefits. This claim for PTD was premature because it was filed approximately two and one-half years before the claimant reached maximum medical improvement (MMI) and before he was given a permanent partial disability (PPD) rating by his attending physician. In the meantime, the E/C had continued to pay TTD from the date of the accident until claimant’s discharge in October 1980, except for two short periods during which he returned to work.
A claim for an increase in compensation was filed March 12, 1980. A hearing was held on this claim and the average weekly wage and the compensation rate being paid by the E/C was found to be correct. This second claim was filed approximately six months prior to the date the claimant reached MMI and was given a PPD rating.
Even though claimant’s treating physician gave him a 20% PPD rating at the time of his discharge, the E/C voluntarily almost doubled that rating to 35% and timely began payment of PPD benefits. On November 14, 1980, less than one month later, claimant’s attorney filed a second claim for PTD benefits. A hearing was scheduled for May 29, 1981 on this third claim, but the issue of PTD was not determined on that date. Instead, the attorneys for the parties *736 and the deputy agreed to refer the claimant for a determination as to whether he could be rehabilitated, to any extent, prior to an adjudication of PTD. The E/C paid all rehabilitation expenses and paid TTD benefits as provided by law from July 9 until October 26, 1981, when the E/C were advised by the rehabilitation firm that rehabilitation efforts were unsuccessful. On October 27, 1981, one day after being advised of the failure of rehabilitation, the E/C accepted the claimant as PTD and have continuously paid PTD benefits since that time. For the entire time from the date of his accident to the present, the claimant has promptly received the maximum disability benefits to which he was entitled. In addition, the E/C paid all of claimant’s rehabilitation expenses in a good faith effort to rehabilitate him. Unfortunately, the effort to rehabilitate the claimant was unsuccessful.
The workers’ compensation law encourages the rehabilitation of injured employees. Section 440.49, Florida Statutes (1977) provided that in cases in which it appeared that disability probably would be permanent the division would assist the injured employee to obtain appropriate training, education, and employment. It even provided that a claimant’s PTD or PPD compensation could be suspended, limited, or reduced if he refused, without reasonable cause, rehabilitative training and education which was in his best interest, without reasonable cause. Section 440.49, Florida Statutes (1979) provides that the E/C, at their own expense, shall provide an injured employee with appropriate training and education if it appears that the injury will preclude the employee from earning wages equal to his or her pre-injury wages. It further provides that prior to adjudicating an injured employee to be PTD, the deputy shall determine whether there is a reasonable possibility the injured employee may be rehabilitated.
Appellee contends that the rehabilitation procedures should follow rather than precede the adjudication of PTD citing Finkley v. John Raffa Lathing, 120 So.2d 9 (Fla.1960); Vaughn v. International Co., 102 So.2d 825 (Fla. 3d DCA 1958); and Stewart v. Board of Public Instruction, Dade County, 102 So.2d 821 (Fla. 3d DCA 1958). The cited cases are inapplicable. Stewart quashed an Industrial Commission order which had found that the deputy prematurely awarded PTD benefits since the award was made before exhaustion of all efforts to rehabilitate the injured employee. In holding that rehabilitation should follow, not precede, an adjudication of permanent disability, Stewart said:
Turning now to the question stated at the outset of this opinion, it was contended by petitioner that he was entitled to the benefit of the adjudication of permanent total disability, and that rehabilitation as provided for by the statute comes after such an adjudication, and not before it.
The petitioner’s contention in that respect is correct. The statute, section 440.49, in dealing with rehabilitation in permanent disability cases, refers to persons who have been “adjudged” to be permanently disabled. A gloss is placed on this meaning of the statute by the provision in subsection 3 for determination as to rehabilitation to be made “within two years after a disability has been so adjudged.” .. .

The enabling statute provides clearly and expressly that the rehabilitation matters authorized thereunder come after adjudication of permanent disability.
We are not concerned with the wisdom of the statute in that respect, but any such change as indicated by the commission’s present policy, if desirable, should be a legislative matter, and we are now guided by the statute according to its present wording.
Id. at 824, 825. Stewart was cited as controlling in Vaughn.
*737 However, Stewart and Vaughn were based on the 1957 version of § 440.49(1), Fla.Stat., which provided in part as follows:
In cases involving total or partial disability adjudged to be permanent the commission shall assist injured employees to obtain appropriate training, education and employment.... (emphasis added).
The legislature apparently took note of the court’s statement in Stewart that it was not the judiciary’s function to question the wisdom of the law and that any change should be a legislative matter because the 1959 legislature promptly deleted the requirement that the disability be adjudged to be permanent. From 1959 until the 1979 amendment, § 440.49(1), Fla.Stat. has provided in part, without material change:
In cases in which it appears that disability probably will be permanent the commission shall assist injured employees to obtain appropriate training, education and employment.... (emphasis added).
The language relied upon by the court in its decisions in Stewart and Vaughn has therefore been deleted for more than 20 years.
In Finkley, the Supreme Court stated it was inclined to agree with Stewart and Vaughn that rehabilitation proceedings under § 440.49, Fla.Stat. (1957) should follow rather than precede the adjudication of disability. As pointed out above, the 1957 Act was amended in 1959.
Section 440.49(1), Florida Statutes, was amended in 1979 and now provides as follows:
(a) When an employee has suffered an injury covered by this chapter and it appears that the injury will preclude the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services... .

(c) Prior to adjudicating an injured employee to be permanently and totally disabled, the deputy commissioner shall determine whether there is a reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education, (emphasis added).
After the 1959 amendment, rehabilitation proceedings should precede the determination of PTD under both § 440.49(1), Fla. Stat. (1959) and § 440.49(1), Fla.Stat. (1979), which was in effect at the time of the scheduled hearing on the PTD claim. See W.R. Grace & Co. v. Marshall, 405 So.2d 444 (Fla. 1st DCA 1981).
If the rehabilitation effort had been successful the claimant would not have been PTD. It could not have been determined before rehabilitation whether he would be PTD. The mere filing of a claim does not automatically start .the 21-day period running. If the issue was premature or not “ripe” when the claim was filed, then the employer could not be expected to make an informed decision on whether or not to accept the claim. Latt Maxcy Corp. v. Mann, 393 So.2d 1128 (Fla. 1st DCA 1981). The E/C have promptly and timely paid the claimant all benefits to which he has been entitled and have fully complied-with the spirit and intent of the workers’ compensation law.
The claim for PTD filed March 30, 1978 was premature. The claim filed November 14, 1980, less than a month after the E/C had accepted a PPD rating almost twice the amount found by the claimant’s attending physician was premature. The law requires that prior to adjudicating an injured employee to be permanently and totally disabled the commissioner shall determine whether there is a reasonable possibility the injured employee may be rehabilitated. This requirement is clear and specific. The law further requires that the E/C pay the claimant TTD benefits while undergoing rehabilitation and these benefits are payable without any deduction from any permanent benefits eventually awarded.
Under the circumstances, the claimant’s attorney is not entitled to a fee from the E/C. Neither is the claimant’s attorney *738 entitled to a fee from the claimant since this cause involves a pre-1979 injury. The claimant was injured February 20,1978 and the law in effect at that time was § 440.34, Fla.Stat. (1977), which did not authorize claimant’s attorney to collect a fee from claimant. The claimant’s attorney entered into a contract with claimant for the payment of an attorney’s fee in March 1978 and almost two years later filed a petition for approval of the fee by the deputy. The petition for approval cites § 440.34 (1979) as authority for attorney’s fees and for the approval of the attorney’s fee contract by the deputy. The 1979 amendment to § 440.34 made a substantial change in the substantive rights and obligations of the claimant and required him to pay his attorney’s fee, instead of the E/C, with only three exceptions. The acceptance of the workers’ compensation law by the E/C and the claimant constituted a contract under the law as it existed at the time of claimant’s injury. A retroactive application of § 440.34, Fla.Stat. (1979) would adversely affect claimant’s substantive rights and be an unconstitutional impairment of contract. See Hardware Mutual Casualty Co. v. Carlton, 151 Fla. 238, 9 So.2d 359 (1942); Ship Shape v. Taylor, 397 So.2d 1199 (Fla. 1st DCA 1981).
In support of its position that rehabilitation proceedings are not required prior to the determination of PTD, the majority cites Jack E. Merklein, Inc. v. Hohl, 413 So.2d 829 (Fla. 1st DCA 1982); Viking Sprinkler Co. v. Thomas, 413 So.2d 816 (Fla. 1st DCA 1982); and W.R. Grace & Co. v. Marshall, 405 So.2d 444 (Fla. 1st DCA 1981). Merklein and Viking are inapplicable because they involved a 20% and a 10% PPD respectively and not PTD. Section 440.-49(l)(c) requires that rehabilitation be determined “[p]rior to adjudicating an injured employee to be permanently and totally disabled....” (emphasis added). Although Grace may lend some comfort to the majority opinion, there the determination of rehabilitation proceedings and PTD was done concurrently. The concurrent finding was approved on the grounds that to require the complete course of rehabilitation evaluation as a condition to recognizing claimant’s permanent disability would leave the claimant either without compensation for a present disability or in receipt of an adulterated type of temporary disability extending beyond the date of MMI. The reason given overlooks the statutory requirement that the claimant shall be paid TTD in addition to rehabilitation expenses during the rehabilitation process. Section 440.49(l)(d) further provides that for the purposes of permanent impairment benefits under § 440.-15(3)(b), the post-1979 equivalent of PPD, the date of MMI shall be no earlier than the last day for which such temporary disability benefits are paid.
Even if the claimant is entitled to an attorney’s fee, the $12,000 fee awarded is excessive. The claimant’s attorney spent 37.3 hours according to his own time records in the prosecution of this claim. More than 23 of these hours were for services which did not contribute to the procurement of the PTD benefits, were rendered during a period that the carrier was paying all benefits due claimant, and were rendered before the second claim for PTD benefits was filed. This would leave, by the claimant’s attorney’s own calculations, 14 hours of service rendered in connection with the PTD claim. The fee awarded results in the claimant’s attorney receiving approximately $857 for each hour rendered in connection with the PTD claim. An average of $200 an hour is ample compensation for services rendered in connection with the PTD claim, most of which consisted of hand-holding with the claimant and calls to or correspondence with the E/C’s attorney.