McBRIDE, Judge.
Plaintiff sustained an injury as the result of an accident while working for defendant as longshoreman on May 19, 1955, and he brings this suit for workmen’s compensation alleging that the accident rendered him totally and permanently disabled. That there had been some disability is not contested and the suit is defended on the ground that plaintiff is not now disabled to any extent and is fully competent to return to the duties of his employment, and, alternatively, if the court should find that plaintiff actually suffers a disability at present, it is limited to and results from a recurrent ganglion of the dorsum of the left wrist which condition can be completely eliminated by means of minor surgery which defendant has recommended, tendered, and offered to plaintiff but which he has arbitrarily and unreasonably refused.
The trial judge concluded, after hearing the evidence, that plaintiff was totally and permanently disabled from doing work of any reasonable character and he gave plaintiff a judgment for compensation at the rate of $30 per week for the period of his disability, however, not beyond 387 weeks. Thirteen weeks’ compensation had already been paid by the employer. Defendant has taken this appeal.
Plaintiff’s injury occurred when a large skid slipped and forced his left hand and wrist backwards or as one of the physicians put it “jammed his wrist in dorsiflexion.” On the fourth day after the accident he was sent to Owens Clinic in New Orleans and his condition was diagnosed as a ganglion in the left wrist. We understand a ganglion to be a cystic mass situated near a joint, the mass being elevated because its sac contains joint fluid. The medical testimony is to the effect that some ganglions are of a painful nature.
On May 30, 1955, plaintiff’s ganglion was removed by surgery performed by Dr. Mark Gorney under a general anesthetic, and Dr. Gorney continued post-operative treatment until June 14, 1955. He concluded then that nothing more could be done for plaintiff so he discharged him for return to work the following day. Plaintiff never attempted to resume his employment and his testimony is that the operation failed to improve his condition. Shortly afterward he reported back to Owens Clinic, making the same complaints as before, and was referred to Dr. Daniel C. Riordan for an orthopedic examination.
Plaintiff has received no medical care whatever since the termination of Dr. Gor-ney’s treatment in June of 1955. Dr. Rior-dan, to whom he had been sent by Owens Clinic, saw plaintiff twice but only for the purpose of examination. Drs. O. L. Pollin-gue and Harry D. Morris, both orthopedists, also examined but did not treat plaintiff.
Dr. Pollingue appeared as a witness on behalf of plaintiff while Drs. Gorney, Rior-dan and Morris testified as defense witnesses. Not only do there appear in the record the usual disagreements as between plaintiff’s expert and those appearing for the defense, but it appears that the defense experts sharply disagree amongst themselves as to what the present condition of plaintiff really is. Drs. Pollingue and Riordan are of the firm opinion that plaintiff has a recurring ganglion on his left wrist which should be removed by surgical means under a general anesthetic. Drs. Gorney and Morris are as equally positive there is no ganglion.
Dr. Pollingue thought there was a limitation in the motion of the wrist due to the strain-type of injury plaintiff has sustained as well as the ganglion. He admitted that sometimes it is possible for a person with a *71 ganglion to go to work and it could be that if plaintiff tried he might return to his long-shore duties, but he made it clear that plaintiff would experience pain as the result of the activities. However, his conclusion was that the ganglion called for surgical treatment. Dr. Riordan attributed plaintiff’s limitation of flexion of the wrist to the presence of the ganglion and because of the fact that the patient had been holding his wrist in an extended position and had not been actively exercising it. He believed that plaintiff could work and that while he might suffer discomfort at first, it would disappear altogether in due time. He and the other physicians are in accord that the duties of one’s work act as excellent physiotherapy. Dr. Gorney’s unqualified statement was that there was no reason at all why plaintiff could not pursue his occupational duties. He found no recurring ganglion and stated that there was good motion in plaintiff’s wrist and with finality dismissed plaintiff’s complaints of pain by saying that “it is of a subjective nature.” Dr. Morris thought plaintiff has some disability probably as the result of surgery and disuse of the hand and expressed the opinion that whatever limitation of movement there was would improve with actual use of the extremity.
An interesting aspect of the medical evidence is the extremely divergent views expressed by Dr. Pollingue and Dr. Gorney. They both examined plaintiff’s wrist in the courtroom during the course of the trial and under the eye of the judge. Dr. Pollingue could see the recurring ganglion while Dr. Gorney was certain there was not only no ganglion but that nothing at all was wrong with plaintiff. Dr. Pollingue perceived a limitation of the wrist and believed that plaintiff’s complaints of pain were genuine even though it did appear to him that plaintiff was “holding back” or exaggerating his condition to some extent during the examination.
Another feature of the case which we find odd is why Dr. Riordan would recommend the surgical removal of the ganglion despite his opinion that whatever defect there was in the wrist, including the ganglion, would entirely disappear in time as a result of plaintiff’s activities if only he would return to work. The doctor when interrogated about this made this statement:
“Occasionally one of those things will disappear with time, but I can’t say whether this would disappear or not.
* * * The reason that surgery was recommended on him was that I think that it would be the shortest way of getting the man over his pain which was the main thing he complained about.”
The quoted testimony is irreconcilable with a pertinent and emphatic statement Dr. Riordan had made previously. He first asserted he thought the ganglion would disappear with use of the wrist but subsequently he made the flat assertion that he is unable to say whether plaintiff’s ganglion “would disappear or not.”
There is another manifest inconsistency. Dr. Riordan estimated that it would require a period of from four to eight weeks’ time for plaintiff to attain the normal and free use of the wrist without pain if he returned to his employment, and his estimation of the time required for convalescence after removal of the ganglion by surgery would be “not less” than nine weeks. Thus, although Dr. Riordan suggested surgery because he believed it to be the “shortest way of getting the man over his pain,” it turns out that surgery would not be the “shortest way” after all. Frankly we are completely at a loss to follow Dr. Riordan’s line of reasoning.
We are certain there is a recurring ganglion on plaintiff’s wrist and we are equally as sure that plaintiff cannot do the heavy duties required of a longshoreman without pain unless his condition is corrected by the surgical operation recommended by Drs. Pollingue and Riordan. The latter’s statement that surgery would be the “shortest way of getting the man over his pain” is very significant and strongly indicates that plaintiff, if he were to attempt to go back to his occupational duties, would suffer real and actual pain not as a result of mere disuse of the wrist, but rather because the ganglion is of the painful type. We think Dr. Riordan recognized this. Therefore, we *72 are constrained to hold that the painful condition which the ganglion occasions in effect permanently and totally disables plaintiff, within the purview of the Workmen’s Compensation Statute, LSA-R.S. 23:1021 et seq., from returning to his former or a similar occupation. The law does not expect and it does not contemplate that a workman in order to make a living must do his work in pain. See Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1.
In view of the alternative defense, it is necessary now to determine whether the injured workman’s unwillingness to submit to the operation for the removal of the ganglion tendered by the employer is unreasonable or arbitrary. In order to decide the question all of the surrounding conditions and circumstances must be inquired into as each case involving the precise question must be decided on its own peculiar set of facts.
First let us say there is no provision of law making the requirement that an injured workman must submit to a surgical operation as a prerequisite to recovering compensation. But there are in the jurisprudence established by the Courts of Appeal of this state several cases wherein it appeared that the surgical operation was relatively simple and that the advantages to be procured thereby were so nearly certain that it was held that the claimant should be required to undergo the operation. See French v. Employers Mut. Liability Ins. Co. of Wisconsin, La.App., 70 So.2d 179; Fredieu v. Mansfield Hardwood Lumber Co., La.App., 53 So.2d 170; Leday v. Lake Charles Pipe & Supply Co., La.App., 185 So. 655.
In 1921 the Supreme Court recognized that there is such a thing as an injury curable by an operation so simple and unattended by risk that the real cause of the disability would not be so much the injury as the not making use of the easy remedy for it at hand. See Bronson v. Harris Ice Cream Co., Inc., 150 La. 455, 90 So. 759.
But the injured workman is not required to resort to a surgical operation of a serious nature and more particularly when it is doubtful that material advantages will flow from the operation and redound to the benefit of the workman. Courts are reluctant to require injured litigants to submit to surgery. See Simmons v. Blair, 194 La. 672, 194 So. 585; Fredieu v. Mansfield Hardwood Lumber Co., supra; Yarbrough v. Great American Indemnity Co., La.App., 159 So. 438.
When we come to consider the facts of the case before us, we could not hold otherwise than that plaintiff in persisting in his refusal to submit to the tendered operation is not unreasonable or capricious and that he is fully within his rights as regards the position he takes. Plaintiff has no assurance whatever that the operation even if successful would bring permanent or material salutary results. On the contrary, the weight of the expert testimony shows that the operative procedure might all have been in vain because in a goodly percentage of cases ganglions recur. Plaintiff himself had just such an unfortunate experience. In spite of all of Dr. Gorney’s skill with his surgeon’s knife, the plaintiff is now before us with his original complaints. It was clearly pointed out by Dr. Pollingue that a ganglion might recur again and again and that with each successive operation more and more fibrosis (scar tissue) would form at the site. Thus it is apparent that there exists the possibility that instead of benefiting the patient the recommended operation might in reality cause his condition to deteriorate considerably. Another reason for saying that plaintiff’s unwillingness to be operated upon is not the result of unreasonableness or caprice is that to undergo such surgery as is tendered would be to assume not merely fancied but the actual risks of a serious operation. The removal of a ganglion is not at all a simple matter. When asked if it was, Dr. Pollingue made this reply:
“I would say no. It is not one of the larger cases, by a long shot, but it is a *73 good sized case, since the ganglion usually goes down into the joint itself, to the wrist joint.”
Moreover, it is well known that a general anesthetic is fraught with appreciable risk to one's life. See Bronson v. Harris Ice Cream Co., Inc., supra; Wolf v. Louisiana Milk Products Co., Inc., 8 La.App. 657.
The judgment appealed from is affirmed.
Affirmed.