CHRIS T. BARNETTE, Judge pro tem.
This is an appeal from a judgment awarding the plaintiff workmen’s compensation at the rate of $3S.OO per week for a period of fifty-two weeks from July 31, 1961, in addition to the compensation paid to him prior thereto. The plaintiff has appealed praying that the award be increased to the maximum of four hundred weeks for total permanent disability. The defendant has answered the appeal praying that the award be amended to date from April 7, 1961, or be reduced to thirty-six weeks dating from July-31, 1961.
The only question before this Court is one of fact relating to the extent of plaintiff’s injury and resulting disability. 'The defendant has not disputed the plaintiff’s claim of accidental injury in the course of employment, but on the contrary .made voluntary payments of compensation to him from the-date .of the injury, April 29, .196.0, to July.- 31;, '1961, -except for a few weeks during .that period when plaintiff returned to work and was paid regular wages.
O.n April 29, j'960, the plaintiff-appellant, Jeajrry D. Anderson, while in the course of his employment with defendant fell and injured his back. He finished the day but on the next day obtained a medical slip and reported to the -Brown-McHardy Clinic where examination revealed evidence of. a recent injury. The report of the clinic states objective findings to be “abrasion of low back;- acute lumbosacral strain; possible disc.” ...
The initial report indicated a disability of four to six weeks.
Within .a few days, plaintiff returned to his employment under advice that he avoid heavy lifting. After'.a'.few'days he found it necessary to return to the clinic for further treatment and was discharged on May 30-as being able to resume his employment. He continued to work until August. 10, 1960, when he complained of disability to perform the duties required of him by his employer. Cancelled checks filed in evidence show that he received regular wages of $66.50 weekly from the date of injury to June 17, from which date he received $70.40 weekly to August 12, 1960. Beginning August 31, 1960, compensation at the rate of $70.00 twice monthly except for three payments of $105.00 were paid to July 14, and the final payment of $50.00 was made July 31, 1961. This suit was filed February 20, 1961.
The defendant filed a plea of prematurity which was overruled. The plaintiff contended that he received no payment for the period of August 10 to August 17, 1960, which we think is without merit, and further that the compensation payments were not made weekly as required by -law. Now that we have all the facts before us we think his contention is very technical, if not frivolous, -and the plea of prematurity probably should have been sustained. However;' this Court in refusing writs prior to trial said:
“The .question of whether full compensation has been paid and is b.eing paid is a'question of fact which can he determined ;on appeal.. No irreparable injury will result. WRITS REFUSED.”
The case was tried on the merits and finally concluded May 24, 1963. On June 28, 19.63, in overruling a motion for rehearing, the trial judge said:
' “The Court considered thoroughly Dr. LeNoir’s testimony, and what you said just now is perfectly correct. Dr. LeNoir said he always suspected the man had a disc and he never changed his opinion; 'that was his testimony, .but he discharged the man to •return to work. Now, Dr. LeNoir sent him to Dr. Corales and the examination was negative,, and-he sent him to Dr.' Page .and the examination was negative.. -He had .a myelogram.per-. *722 formed at Baptist Hospital and it was negative.
“Dr. LeNoir testified he examined it and the radiologist examined the myelogram, and both of them considered it negative, or interpreted it negative. In addition to that we had Dr. Cahen, Dr. Brown, and Dr. Brown I think, admitted this type of injury could cause a disc, hut he didn’t find one. He said that one could be there, but he did not find one. We had one, two, three, four doctors and they are all negative.
“Now, at a later point in time Dr. Garcia Oiler diagnosed a disc, and at still a later point in time Dr. Winokur diagnosed a disc, which may or may not he within his field, and I’m not going to quibble over that.
******
“If Dr. Winokur comes in Court tomorrow and testifies and establishes conclusively by myelogram, by any other method that the man has a disc it does not necessarily relate back to this accident. On the evidence presented to the Court, the Court was of the opinion that this man did not sustain a disc injury in this accident, no matter what his condition is today, and on the basis of sound medical authority and considerable thought by the Court in review of the testimony, the Court is of the conclusion he was able to return to work under the circumstances outlined by Dr. LeNoir, who incidently would hardly discharge a man to return to work had he thought he had a disc.”
There are no questions of law presented here. Only one citation of authority has been offered by either counsel, and that we find in plaintiff’s brief, Jackson v. Bituminous Casualty Corp., La.App., 153 So.2d 585. That case is strikingly similar to the present one and on the basis of the facts presented in the Jackson case this Court affirmed the judgment of the trial court awarding maximum compensation for total disability. The plaintiff-appellant here relies on the following statement of law as enunciated by this Court in that case:
“ * * * The jurisprudence is to the effect that the mere fact that a compensation claimant is unable to specifically classify or indicate the type of injury he has sustained does not preclude a recovery of compensation. The test is disability vel non and not the nature of the injury. Johnson v. Atlantic and Gulf Stevedores, Inc., La.App., 102 So.2d 518.
“The trial judge believed that plaintiff was unable, on account of pain and discomfort to return to the heavy duties required by his occupation of a laborer and so stated in his written reasons for judgment.
“Well-established jurisprudence holds that a workmen’s compensation claimant will be deemed totally and permanently disabled where he is unable to resume his former employment without enduring substantial pain. Reed v. Calcasieu Paper Company, Inc., 233 La. 747, 98 So.2d 175; Emilien v. National Gypsum Company, La.App., 109 So.2d 106; Watson v. T. Smith and Son, Inc., La.App., 88 So.2d 69.”
We have read carefully the lengthy transcript of testimony which consists principally of the testimony of six doctors each well qualified in his own field of specialty, three of them being orthopedists and three neurosurgeons. We find their testimony to be well summarized in the written opinion of the trial judge as follows:
“Plaintiff was treated by Dr. LeNoir, an orthopaedic surgeon, from July 11, 1960 through April 7, 1961. During this period, he was symptom free at times, and at other times there were some symptoms. Dr. LeNoir had plaintiff examined and evaluated by Dr. Corales, a neurosurgeon, on August 11, *723 1960. Dr. Corales found some decrease in the reflex of the right ankle, some limitation on the straight leg raising test, but ruled out nerve root involvement, as the pain did not radiate. He requested that plaintiff be returned for an additional examination if the symptoms persisted, but his examination was negative as to disc injury and nerve root involvement. Dr. Page, a neurosurgeon, also examined plaintiff on November 29, 1960 at the request of Dr. LeNoir. Dr. • Page found some loss of sensation, which he testified was inconsistent with other findings, and his conclusion was that plaintiff had simulated sensory defects. His examination was negative.
“Dr. LeNoir had made a tentative diagnosis of low back pain syndrome, cause undetermined, possible herniated lumbar disc. Despite the negative examinations of Drs. Corales and Page, Dr. LeNoir, on November 28, 1960, had a myelogram performed at Baptist Hospital. According to his interpretation of the myelogram and the interpretation of the radiologist, it was negative.
“Dr. Irvin Cahen examined plaintiff on June 28, 1961, and his examination was negative. He testified he found no evidence of either a ruptured disc or nerve root compression.
“Dr. Gernon Brown examined plaintiff on May 19, 1960 and treated plaintiff three (3) or four (4) times with diathermy. He found very little objective symptoms and diagnosed the sprain and contusion of the lumbosacral area. He discharged plaintiff on May 30, 1960 as able to return to his usual occupation.
“Dr. Garcia Oiler, a neurosurgeon, examined plaintiff on May 22nd, October 2, 1961, and January 16, 1962, at the request of plaintiff’s attorney. His opinion was that plaintiff had the classic findings of a disc rupture.
“In view of the negative reports of Drs. Corales, Page, Brown and Cahen, it is very difficult to accept the conclusion of Dr. Oiler, following an examination some thirteen (13) months after the accident, and to relate it to the prior injury, if accepted. In considering the opinion of Dr. Oiler in connection with the adverse opinion of the other doctors, the Court considers it significant that Dr. LeNoir was the attending physician. He had plaintiff examined by Drs. Corales and Page, and the myelogram performed at Baptist Hospital in connection with his treatment and not for the purpose of either establishing or ruling out a disc injury, but simply to ascertain plaintiff’s condition. Under these circumstances, the Court feels that the testimony of these physicians is of more significance than the testimony of Dr. Oiler, who was employed by plaintiff’s attorney for the purpose of the law suit. Dr. LeNoir, as the attending physician, was in a better position to evaluate the plaintiff than was any of the other doctors. He discharged plaintiff on April 7, 1961 as able to return to work, provided he began with lighter duties and gradually worked into his regular duties. * * * ”
This Court said further in the Jackson case, supra:
“Proof of disability arising by reason of subjective pain must of necessity depend to a great extent upon the evaluation of the truthfulness of the claimant’s complaints, and proof of the disability based essentially upon such evaluation is sufficient to support an award of workmen’s compensation when the medical testimony shows that such disabling pain may be the residual from the industrial accident. Schram v. Lake Charles Ready-Mix, Inc., La.App., 125 So.2d 213.”
We find here that the subjective symptoms of pain related by the plaintiff *724 are not supported by the medical testimony to be residual from the accident of April 29, I960.
In the Jackson case this Court also restated the well-established jurisprudence of this state in the following language:
“Where the veracity of a witness is involved, the lower court is in the better position to pass upon the question because the trial judge had the opportunity of observing the demeanor of the witness while he is giving his testimony, and in these circumstances the reviewing court is in no position to say that the trial judge manifestly erred in his findings unless the testimony accepted below is so obviously unsatisfactory or inconsistent as to destroy the credibility of the witness. See Barlotta v. Walker, 223 La. 157, 65 So.2d 122.”
The trial judge found the plaintiff had not made a serious attempt to rehabilitate himself in the manner recommended by the doctors. It also was “not at all impressed” with plaintiff’s testimony, finding him to exaggerate his numerous complaints. He was of the opinion, supported by the testimony of Dr. Cahen, that much of his pain was compatible with the degenerative changes of his age group due to arthritis.
We find no reason to disturb the findings of fact of the trial court. On the contrary we are of the opinion they are amply supported by the testimony before us.
 We think the trial judge was very liberal in his allowance of additional compensation of fifty-two weeks. The defendant’s argument that it should date from April 7, or be reduced to thirty-six weeks from July 31, 1961, is not entirely without merit and has had our earnest consideration. Defendant does not seriously press this issue nor complain that the plaintiff 'was given the benefit of all doubt. The difference being only sixteen' weeks we think is not enough to amount to an abuse .of discretion. We concur with the trial judge that this doubt should be resolved in plaintiff’s favor.
The judgment appealed from is affirmed.
Affirmed.